Filed Jan. 28, 1885.

———————◆———————

No. 10,696.

BARNETT v. THE STATE.

CRIMINAL LAW.—*Murder.*—*Manslaughter.*—*Indictment.*—Under an indictment charging murder in the first degree, there may be a conviction for manslaughter if the evidence warrant it.

SAME.—*Self-Defence.*—Life may be taken in the reasonable and lawful exercise of the right of self-defence. This right must be exercised honestly ; a party can not provoke an assault in order that he may have an apparent excuse for the killing.

SAME.—*Instructions.*—An instruction, unobjectionable as far as it goes, will not be condemned, as an available error. If, in such case, a party wishes further instructions he must ask for them.

SAME.—A party will not be heard to complain of an instruction as erroneous which is more favorable to him than he has a right to ask.

SAME.—*Province of Jury.*—An instruction to the jury, that they are the judges of the law, that the court's instructions are not to bind their consciences, but merely to aid and assist them in a true apprehension of the law, and its proper application to the evidence, is not erroneous.

SAME.— *Harmless Error.*—The refusal of instructions, the substance of which is embodied in charges given, is not an available error.

From the Gibson Circuit Court.

*J. E. McCullough, J. B. Gamble, J. W. Gordon, R. N. Lamb* and *S. M. Shepard,* for appellant.

*F. T. Hord,* Attorney General, and *W. B. Hord,* for the State.

ZOLLARS, C. J.—On the 10th day of February, 1881, ap-pellant shot and killed one James Ellis. He was tried upon an indictment charging him with murder in the first degree, convicted of voluntary manslaughter, and sentenced to the State's prison for ten years. There is evidence in the record showing, or tending very strongly to show, the following facts: Appellant is a strong, vigorous man of about twenty-eight years of age, and weighs about one hundred and eighty-five pounds. The deceased weighed about one hundred and thirty-two pounds, and was about fifty years of age. These persons had some difficulty, and a personal encounter at the October election in 1880, in which appellant struck and knocked the deceased from the sidewalk. There is some testimony that subsequent to this difficulty, appellant on different occasions said that he intended to kill some one, but there is nothing to show, with anything like certainty, that he had reference to the deceased. One witness, however, tes-tified that he had a conversation with appellant a short time before the homicide, in which appellant, in referring to the difficulty with Ellis at the election, said that if he had had his "pop" with him, he would have killed him—that he had his "pop" now. There is evidence also, that subsequent to this difficulty appellant said that if the deceased came in his way, he would "pop" him again, and that the deceased said that he had had a difficulty with appellant that should at some time be settled. On the day of the homicide, the parties met in a saloon in Hazleton, Gibson county. At first there was no manifestations of ill feeling on the part of either. They indulged in drinking, treating each other and those present. Appellant knocked a pipe from the mouth of the deceased, apparently in a playful manner and without ill feeling. Sub-sequent to this, the deceased tripped appellant so that he fell. Upon getting up, the deceased brushed the dust from his clothes, saying that it was all in fun. Appellant responded that it was on the bills, and must be played. There is evi-dence that prior to this, the deceased said to appellant that

he, appellant, had broken his jaw once, but could not do it again, and that subsequently there was further drinking. Still subsequent to this, appellant, for some cause, not very clearly shown by the evidence, took off his coat and vest, laid them upon the counter, and his revolver upon them; said that he could whip the deceased upon less ground than he stood upon, and insisted that they should go from the room and fight it out. At this time, appellant was angry, and cursing and swearing in a violent manner. The deceased did not seem to be angry, and said that appellant was a larger man than he, and that he did not want to fight. After appellant was induced to put his clothes on, he continued cursing the deceased, and finally struck him, as some of the witnesses stated. He continued cursing until the deceased said: "Cal, you ought not to serve me that way, you are a bigger man than I am; I am not able to fight you; Cal don't curse me, I will take it from no man," etc. Shortly after this, the deceased went to a back room, returned with a heavy quart bottle filled with beer and struck appellant with it upon the head, breaking the bottle and inflicting a wound. At this time, one of the witnesses was standing between appellant and the deceased. If it was his purpose to keep them separated, he did not succeed, for immediately after the blow, appellant seized Ellis and fired his revolver. After the shot, the revolver was knocked from his hand by a bystander. A severe fight followed. Ellis died from the effects of the shot in a few minutes after they were separated. Appellant was arrested on the same day of the homicide, and, when asked why he shot Ellis, said: "Damn him, I ought to have shot him ten years ago."

It must be clear that we can not reverse the judgment on the weight of the evidence. Indeed, had the conviction been for a higher grade of crime, with the corresponding severer penalty, we could not reverse the judgment upon the evidence in the record. There is scarcely plausible ground here, in our judgment, for a claim that the shooting was in self-

defence. From the first, appellant was the aggressor. By abuse and assault, he goaded the deceased into an assault upon him. The evidence is conclusive that the deceased had no weapon except the beer bottle. When that was broken, his weapon was gone. The blow with it inflicted a wound upon appellant, but in no material way disabled him. He was a young, stalwart man. The deceased was confessedly his inferior in physical strength. When his weapon was broken, without serious injury to appellant, the latter must have known, and without doubt did know, that he was in no danger of any serious injury. The shooting on his part is utterly without any kind of justification. That the jury in their leniency acquitted him of malice, is no reason at all why we should extend the leniency to an absolute acquittal, or shut our eyes to the whole evidence in the case, when asked to review the case upon the evidence.

Many objections are urged to the instructions given by the court, and to the action of the court in refusing those asked by appellant. To these we give our attention in the order discussed.

In the first and second instructions, the court properly charged the jury as to the crimes of murder in the first and second degree, and manslaughter, and also as to the presumption of innocence and the rule as to reasonable doubt.

After having charged the jury in the third instruction, that the State must prove beyond a reasonable doubt that the killing was unlawful, etc., the instruction closed as follows: "This involves an inquiry into the rules of law in relation to the right of self-defence, the manner of its exercise, and the testimony in the case tending to prove or disprove such a state of facts existing at the time of the alleged killing as authorized a right to resort to the use of a pistol by the defendant in the alleged defence of his person." As we understand counsel, the objections to this portion of the instruction are, that it tended to confuse and mislead the jury, and that from it the jury would understand that the facts proven must be

such as to authorize the use of the pistol without reference to appearances, or the belief on the part of appellant that he was in danger of great bodily harm. We think that neither of these objections is tenable. This portion of the instruction did not attempt to lay down rules upon the subject of self-defence, but simply directed the minds of the jury to matters about which they should make inquiry.

The objection urged to the fourth instruction is that it is "scarcely relevant." We think it was, and that it was so favorable to appellant that he has no ground to complain of it. The substance of it was that life may be taken in the reasonable and lawful exercise of the right of self-defence.

The first portion of the fifth instruction was that where a person being without fault, and in a place where he has a right to be, is violently assaulted, he may, without retreating, repel force by force, and if in the reasonable exercise of his right of self-defence his assailant is killed, he is excusable.

No objection is urged against this portion of the instruction. After charging the jury in the subsequent portion of the instruction, that a party is not justifiable in resorting to force on his mere passion, or fear, and that in any case the force used must be such as under the circumstances appears reasonably necessary to prevent the anticipated injury, the instruction closes as follows: " If, however, the assault be of such a character, and so imminent as to warrant the party assailed, considering his situation and the apparent surroundings, reasonably to believe that he is in danger of loss of life, or great bodily harm, and he does so believe, he may use, without delay, such means as may be at hand and reasonably necessary to repel the apprehended attack, and if death follows as the result thereof, he will not be guilty of an unlawful homicide; and if in such case the danger appear to be real, and is believed by him to be so, the fact, if such be the case, that the danger was not real, but only apparent, and that in fact he was in no danger, such fact would not render him guilty."

There are some portions of the instruction that, when taken from their connection and subjected to a critical examination, are apparently not in entire harmony with that quoted.    These the learned counsel have singled out and made a violent assault upon them.    As was once said by this court, it is good military tactics to divide the enemy's forces and defeat and overthrow the separate fractions, as a means of defeating and overthrowing the whole, but it is not proper to adopt such tactics in the examination of an instruction.    As said in the case of *Mc-Dermott* v. *State*, 89 Ind. 187, " The instruction should not be thus dissected and separated.    It must be considered as a whole.    If an instruction may be thus separated into fractional parts, so that one portion may not limit and qualify, or extend and explain another portion, it will be difficult, if not impossible, to form an instruction that will stand such an examination and criticism.    In thus separating into parts, the sense may be twisted and tortured so that the most correct may appear to be the most faulty instruction."    See, also, *Nicoles* v. *Calvert*, 96 Ind. 316;    *Wright* v. *Fansler*, 90 Ind. 492; *Story* v. *State*, 99 Ind. 413.    The portion of the instruction last above set out is really a summing up of the instruction, and states the rule favorably to appellant.

In the sixth instruction, the court charged the jury that the right of self-defence is allowed to the citizen as a shield, and not as a sword, and that in the exercise of the right a party must act honestly ; that a person assaulted may exercise a reasonable degree of force to repel the attack, but must not provoke an attack in order that he may have an apparent excuse for killing the adversary.    In a figurative sense, the right of self-defence is a shield.    Its purpose is to shield and protect one's person from death or great bodily harm.    In its exercise, the assailant may be killed, yet the killing is to shield and protect one's own person.    The statement by the court could in no way improperly influence the jury against appellant.    There was evidence tending to show that appellant provoked the assault by the deceased.    It was to this feature

Barnett v. The State.

·of the case that the court directed the instruction. As preliminary to the statement of the rule in such cases, it was said that the right of self-defence is a shield, and not a sword, and that the party assaulted may use a reasonable degree of force to repel the attack. As to what might, in any case, be the use of a reasonable degree of force, was not particularly stated, because that was not the purpose of the instruction. Clearly, it can not be contended that a party may use an unreasonable degree of force. As to what may be reasonable will depend upon the circumstances of each case. It was not necessary in this instruction for the court to go into that question in detail, because, as we have said, the purpose of the instruction was to guide the jury upon another feature of the case. It is proper to say here that in another charge the court instructed specifically and properly upon this point. We can discover nothing in the instruction that is erroneous, or that might in any possible way mislead the jury.

The eighth instruction was a summing up and statement ·of the theories of the State and the defence. The only complaint is that the instruction closed without the statement of any rules of law as applicable to the theory upon either side, and the evidence claimed to be in support thereof. An instruction of the nature of this, unobjectionable as far as it goes, will not be condemned, as an available error, because it goes no further. If appellant wished the law declared upon the statements made by the court, it was his duty to have submitted and asked such instructions as he wished to have given. *Powers* v. *State*, 87 Ind. 144; *Simpkins* v. *Smith*, 94 Ind. 470; *Carver* v. *Carver*, 97 Ind. 497.

No objection is made to the ninth instruction, except that it might tend to mislead the jury by confusing them. We can not extend this opinion to set out all of the many instructions, and discuss at length the many objections urged against them. We have read the ninth and find nothing in it to confuse or mislead the jury. The instruction was favorable to appellant.

The eleventh instruction was upon the subject of declarations made by appellant before the homicide. If the State, instead of appellant, were complaining, the complaint would challenge careful attention. This instruction, doubtless, went far to weaken the evidence of such declarations, and probably contributed to the acquittal of appellant upon the charge of malice. Very clearly, there is nothing here of which he can, with reason, complain.

Of the objections to the twelfth and thirteenth instructions, it is sufficient to say that they are unsubstantial.

The fourteenth instruction was mainly upon the question of self-defence. After a pretty full statement upon the subject, the jury were instructed, in substance, that if appellant provoked an assault by the deceased as an excuse for the shooting, he was guilty of an unlawful killing. The jury were further charged in this instruction, substantially, that although there might have been premeditated malice, yet, if the shooting followed an assault by the deceased, it should be made clearly to appear that the killing was prompted by the malice, in order to repel the conclusion that it was due to the assault. No fault can be found with this by appellant. Whether the State might properly complain, we do not decide. It amounted to saying to the jury, that the killing was presumed to have been in self-defence. These portions of the instruction are objected to as foreign to the subject upon which the court was charging. We think not. In stating the general rules of self-defence, it was proper to guard them against a misapplication by the jury, and yet give to the defendant the full benefit of them. It may be that the instruction is not in the most appropriate form and language, but we are satisfied that there was nothing in it prejudicial to appellant. The verdict of the jury, convicting appellant of voluntary manslaughter only, is proof of this.

The substance of the sixteenth instruction was that under the indictment, charging murder in the first degree, there might be a conviction for manslaughter, if the evidence war-

Barnett v. The State.

ranted it. This is clearly the law. *Powers* v. *State, supra;* *Carrick* v. *State,* 18 Ind. 409 ; *Dukes* v. *State,* 11 Ind. 557 ; *Moon* v. *State,* 3 Ind. 438.

The seventeenth instruction defines, again, murder in the first and second degree, and voluntury manslaughter. To that portion of the instruction which relates to premeditated malice, we see no valid objection. It is sufficient to say here too, that as the jury acquitted appellant of all malice, whatever the court may have said upon that subject was harmless to appellant. *Worley* v. *Moore,* 97 Ind. 15 ; *Stockton* v. *Stockton,* 73 Ind. 510. If the case were one proper for a charge upon involuntary manslaughter, and appellant wished a charge upon that subject, he should have asked it. *Powers* v. *State, supra; Simpkins* v. *Smith, supra.*

In the nineteenth instruction, the court charged the jury that, under the constitution, they were the judges of the law, and that all that was said to them in the way of instructions, was not for the purpose of binding their consciences, but merely to aid and assist them in a true apprehension of the law and its proper application to the evidence. We see no valid objection to this instruction.

The instructions to the jury must be for some purpose, and while the jury are the judges of the law, and their consciences are not bound by the court's instructions, yet the purpose of instructions is to aid the jury in the determination of what the law is, or there is no purpose at all, and the giving of instructions is a mere idle ceremony, although the statute requires the court to instruct the jury.

We turn now to the instructions asked by appellant and refused by the court. It is well settled that the refusal of instructions, the substance of which has been given by the court in other instructions, is not an available error. *Conradt* v. *Clauve,* 93 Ind. 476 (47 Am. R. 388); *Nicoles* v. *Calvert, supra,* and authorities there cited.

In the fifth instruction requested by appellant, the court was asked to charge the jury, that if the evidence established

an old grudge, or hostile declarations, on the part of appellant against the deceased, the jury might consider them as evidence of premeditated malice, and convict appellant of murder in the first degree. In the first place, the court had, in more than one instruction, charged the jury properly upon these subjects. In the second place, we are unable to understand why appellant should complain of the refusal of an instruction that would have put his life in jeopardy; and, in the third place, the jury acquitted him of malice.

In the sixth instruction refused, the court was asked to charge the jury that if upon the whole evidence they had a reasonable doubt as to whether a grudge existed on the part of appellant, or that he made hostile declarations in relation to the deceased, then they ought to reject all of the evidence upon these points, and allow it to have no weight in determining the guilt or innocence of appellant. The court had fully charged the jury upon the subject-matter of the instruction refused.

In the tenth and eleventh instructions given, the jury were charged that evidence of previous difficulties, ill-will, and hostile declarations on the part of appellant, was admitted for the sole purpose of proving malice; that this was the only office of the testimony, and that "if such proof be not satisfactorily made out, the testimony should go for nothing." Other portions of the court's instructions made it plain to the jury that the evidence upon these points was to be considered only in relation to the question of malice. The verdict shows that the jury did not consider it even for this purpose.

The seventh and eighth instructions refused were upon the weight to be given to testimony of hostile declarations on the part of appellant, and upon the question of reasonable doubt. The court had fully charged upon these subjects, and more strongly in favor of appellant than he had a right to demand.

The ninth instruction refused was upon the subject of self-defence, and was fully covered by the court's instructions.

We need not extend this opinion to decide as to whether or

not the instructions refused state the law correctly. As they were all covered by the court's instructions, we express no opinion upon them.

Upon the whole case we are well satisfied that no error intervened, on account of which the judgment should be reversed. The judgment is, therefore, affirmed, with costs.

Filed Jan. 29, 1885.