Staser *et al. v.* Hogan *et al.*

Filed June 18, 1889; petition for a rehearing overruled Sept. 19, 1889.

---

No. 14,587.

## STASER ET AL. *v.* HOGAN ET AL.

WILL.—*Contest of.*—*Witness.*—*Competency.*—*Opinion.*—In a proceeding to contest a will, the heirs and devisees are competent witnesses as to the mental condition of the testator, and, not being experts, such witnesses must state the facts upon which they base their opinions, including the conduct of the testator, what he said, and, perhaps, a full history of his life.

SAME.—*Mental Incapacity.*—*Undue Influence.*—*Evidence.*—*Views of Testator as to Making Wills.*—In a proceeding to contest a will on the grounds of mental incapacity and undue influence, a conversation between the testator and another in relation to the former's views upon the subject of making wills, in which he spoke strongly against giving one child a larger share of the estate than another, is competent.

SAME.—*Mental Condition.*—*Cross-Examination.*—A witness having testified as to the physical and mental condition of the testator during the last year of his life, a question on cross-examination as to whether the witness would, during that period, have taken a note from the testator, and whether he ever heard anybody question his sanity, is not competent.

SAME.—*Domestic Relations of Testator.*—Where it is sought to set aside a will on the grounds of insanity and undue influence, it is competent to show the relations existing between the testator and his family, as to whether they were friendly or otherwise.

SAME.—*Condition of Testator's Mind.*—*Scope of Inquiry.*—To enable the jury to determine as to the condition of the testator's mind at the date of the will, it is proper to show its condition at any time prior thereto.

| | |
|---|---|
| 120 | 207 |
| 123 | 345 |
| 123 | 410 |
| 120 | 207 |
| 124 | 12 |
| 124 | 447 |
| 125 | 50 |
| 125 | 449 |
| 120 | 207 |
| 129 | 407 |
| 120 | 207 |
| 131 | 134 |
| 120 | 207 |
| 134 | 328 |
| 134 | 452 |
| 135 | 146 |
| 135 | 415 |
| 120 | 207 |
| 137 | 648 |
| 138 | 66 |
| 120 | 207 |
| 141 | 119 |
| 142 | 88 |
| 142 | 199 |
| 120 | 207 |
| 149 | 406 |
| 151 | 656 |
| 120 | 207 |
| 153 | 545 |
| 120 | 207 |
| 157 | 50 |
| 120 | 207 |
| f166 | 33 |
| 120 | 207 |
| 169 | 440 |
| 170 | 214 |
| 120 | 207 |
| f171 | 50 |

SAME.—*Opinion of Witness.*—The testator having been a lawyer, and having conducted the trial of a cause before a justice of the peace a short time prior to his death, the justice might properly detail the facts as to the manner in which the testator conducted the trial, but his mere opinion that he managed the cause " well and shrewdly " is not competent.

SAME.—*Impeachment of Witness.*—Where a witness, upon facts stated by him, gives his opinion that the testator was of sound mind, it is proper to show, by way of impeachment, that he had stated out of court that the testator was childish, and that he was going crazy.

SAME.—*Contradiction as to Collateral Matter.—Interest and Hostility of Wit-ness.*—The general rule that where a witness is cross-examined on matters collateral to the issues, his answers can not be contradicted by the party putting the questions, has no application where it is sought to show that the witness has an interest in the case, or that he is hostile to one of the parties to the action.

SAME.—*Verdict.—Support of Evidence.*—Where a complaint to contest a will charges both mental incapacity and undue influence, a general verdict setting aside the will, will withstand an attack upon the ground that it is not supported by the evidence, if there is evidence tending to support one of the charges made by the complaint.

SAME.—*Instruction to Find for the Defendant.*—Where, in a proceeding to contest a will, there is some evidence tending to support the charge of undue influence, it is proper to refuse to instruct the jury that they should find for the defendants on that issue on the ground that there is no such evidence. \

EVIDENCE.—*Objection to.—Practice.*—Where a witness who is competent to · testify as to some matters is placed upon the stand for examination, an objection then interposed that such witness is not competent to testify as to certain other matters, thus imposing upon the court the burden of watching the testimony and separating the competent from the incompetent, is not well taken.

SAME.—*Admission of Incompetent Testimony.—Motion for New Trial.*—Where some of the testimony of a witness is competent, a motion for a new trial which is predicated upon the admission of testimony of such witness must point out, with clearness and certainty, the particular evidence objected to.

MISCONDUCT OF COUNSEL.—*Argument.— Practice.*—It is only where the court is called upon to correct the injury resulting from the misconduct of counsel during the trial and refuses to do so, whereupon an exception is reserved, that any question can be presented in relation thereto on appeal, unless the injured party moves to discharge the jury.

INTERROGATORIES TO JURY.—*New Trial. —Assignment of Error.*—The refusal of the court to require a jury to answer an interrogatory more

Staser *et al. v.* Hogan *et al.*

specifically may be assigned as a cause for a new trial, but it can not be independently assigned as error in the Supreme Court.

INSTRUCTIONS TO JURY.—*Argument upon Legal Questions.*—*Discretion of Court.*—As the trial court has power to hear argument and authorities bearing upon legal questions involved in its instructions, its discretion in doing so must be harmfully abused in order to constitute available error.

SAME.—*Supplying Omissions.*—A judgment will not be reversed on account of an instruction which is meaningless as it appears in the record, but which, upon supplying evidently omitted words, is correct as an abstract legal proposition.

SPECIAL JUDGE.—*Power of.*—*Final Disposition of Cause.*—Where a cause is tried before a special judge, and a verdict returned on the last day of the term of court, such special judge has authority to hear a motion for a new trial filed on the first day of the next term, and to make a final disposition of the cause.

VERDICT.—*Support of Evidence.*—*Interrogatories.*—If a general verdict is supported by the evidence, a motion for a new trial, assigning as a reason that it is not so supported, should be overruled, without regard to the manner in which interrogatories are answered. ·

SAME.—*Answers to Interrogatories.*—Where there is nothing in the record to show that the verdict is not based upon the charge which the evidence tends to support, it is wholly immaterial whether or not the answers to interrogatories addressed to another branch of the case are supported by the evidence.

From the Posey Circuit Court.

*A. C. Tanner, W. W. Ireland, J. S. Buchanan, C. Buchanan* and *W. E. Niblack,* for appellants.

*G. V. Menzies, D. B. Kumler* and *J. E. McCullough,* for appellees.

COFFEY, J.—This action was commenced by the appellees against the appellants in the circuit court of Vanderburgh county, to contest and set aside the will of John C. Staser, deceased. There are four causes for contest alleged, viz. :

1st. That the said John C. Staser was of unsound mind at the time he executed the will.

2d. That said pretended will was not the will of the said John C. Staser.

3d. That said pretended will was unduly executed.

VOL. 120.—14

Staser *et al.* *v.* Hogan *et al.*

4th. That said will was procured by the undue influence of the defendants, Clinton Staser, Clara Staser, his wife, and others to the plaintiffs unknown.

The cause was venued to the Posey Circuit Court, where the same was put at issue by a general denial of all the defendants. The cause was tried by a jury who returned a general verdict for the appellees. In addition to the general verdict the jury returned answers to interrogatories. Over a motion for a new trial, the court rendered judgment on the verdict, setting aside the will in controversy, and defendants below appeal to this court and assign as error:

1st. That the complaint does not state facts sufficient to constitute a cause of action.

2d. No paragraph of the complaint states facts sufficient to constitute a cause of action.

3d. The court erred in overruling the defendants' demurrer to the first and second paragraphs of the complaint, and to each of them.

4th. The court erred in refusing to require the jury to answer more fully and specifically interrogatory No. 22, which had been submitted to them for answer.

5th. The court erred in overruling the defendants' motion for a new trial.

6th. The court erred in overruling the defendants' objection to Hon. R. D. Richardson's hearing and passing upon defendants' motion for a new trial.

7th. The court erred in overruling the defendants' objection to Hon. R. D. Richardson's rendering judgment upon the verdict herein and in rendering said judgment.

8th. The court erred in overruling defendants' objection to Hon. R. D. Richardson's making any order in this cause at the January term, 1888, of the Posey Circuit Court.

9th. The court erred in overruling defendants' objection to the appointment of Hon. R. D. Richardson as special judge in this cause at the January term, 1888, of the Posey Cir-

cuit court, or to the said Richardson making any order herein at said term.

In the brief of the appellants, no objection to the complaint is pointed out or discussed. The first, second, and third assignments of error must, therefore, be deemed waived.

The fourth is an alleged error occurring on the trial, and was proper matter to be assigned for a new trial, but can not be assigned as error in this court. *Bedford, etc., R. R. Co.* v. *Rainbolt,* 99 Ind. 551 ; *West* v. *Cavins,* 74 Ind. 265 ; *Ogle* v. *Dill,* 61 Ind. 438 ; *Patterson* v. *Lord,* 47 Ind. 203.

Many reasons were assigned by the appellants for a new trial, which we will consider in the order in which they are set forth in the motion.

The first and second reasons assigned for a new trial are, that the verdict of the jury is not sustained by sufficient evidence, and that the verdict is contrary to law.

There is evidence in the record which tends to support the verdict of the jury, and while there may be a seeming preponderance of the evidence in favor of the appellants upon the issues joined, for the many good reasons given in the adjudicated cases, we are not at liberty to disturb the verdict for that reason. The weight of the testimony is for the jury. So well is this rule settled, and so well is it understood, that we deem it unnecessary to cite authorities.

The third and sixteenth causes assigned for a new trial, involve the same legal question and are discussed in the briefs of counsel together, and it is not, therefore, improper to consider them without separation. They seek to raise the question of the competency of Mrs. Hogan, one of the legatees under the will of the deceased, to testify in the cause. It is urged on behalf of the appellees that the objection to the admissibility of the testimony given by this witness was not of such a character as to reserve the question sought to be raised here, and that the motion for a new trial was so indefinite that it does not present the question of the competency of Mrs. Hogan as a witness.

The record discloses the fact that the appellees called Catharine Hogan, one of the plaintiffs below, and one of the appellees here, as a witness, and propounded to her this question : " Where was your father born ? "

The appellants interposed the following objection : " We object to the witness as being incompetent except to testify to the testamentary capacity of the testator."

The objection was overruled, and the appellants excepted. The appellants, by their counsel, then stated to the court that they " objected and excepted to everything except that which conduces to show the testamentary capacity of the testator ; in other words, that which may be proven by the heirs, and nothing else, and the exception to embrace everything the witness may say that does not conduce to show mental capacity, or the want of it, on the part of the testator."

The objection being overruled by the court, the witness was permitted to detail the history of the births, marriages, and deaths of the family of the deceased testator.

At a subsequent period in the trial, the record shows that this witness was again called as a witness on behalf of appellees, and before any question had been propounded to her the appellants stated to the court : " The defendants object to this witness testifying to anything that occurred prior to the death of the testator, and to all communications, except upon the questions and conversation that tend to prove the mental capacity of the decedent, and we object to her testifying to any act or conversation of any of the devisees, for the reason that the statements of one devisee can not be used either for or against the will ; and to save time, and not take up time unnecessarily, this objection to apply to all that this witness may say, as well as to other devisees or heirs," which objection the court overruled, and the appellants excepted.

The witness then testified : " I gave my age the other day. I was raised on the homestead, and lived (there) till I was married. While there I helped to do the work in the house,

helped the boys in the field, and helped my father in the field."

The record states that " the defendants object, because she is an incompetent witness on that subject, and they objected to this answer, and all other questions and answers heretofore made by her not tending to show the sanity or insanity of Mr. Staser. On all other matters she is incompetent under the statutes, and to save time we make the same objections to all other questions not in relation to the mind of decedent hereafter to be asked."

The objection was overruled, and excepted to, and the witness then testified generally in relation to her connection with the family of the deceased before her marriage; to the conduct of, and conversations with, the deceased with a view of giving her opinion as to the condition of his mind at the time of the execution of the will in controversy, as well as to matters which occurred since the death of the testator.

The third cause assigned for a new trial is as follows:

" 3d. For error of law occurring at the trial, and excepted to at the time, by the defendants, in this, to wit, in admitting in evidence and permitting Catharine Hogan, a witness produced and sworn by the plaintiffs, to testify as follows."

Then follows all the testimony of Catharine Hogan when first on the witness-stand, followed by this language: " The testimony of Catharine Hogan, she being a daughter of deceased, John C. Staser, his heir and devisee in his will (is), therefore, incompetent under the statute to such facts, and is also a party plaintiff."

The sixteenth reason assigned for a new trial is as follows:

" 16. In admitting in evidence, and permitting Kate Hogan, a witness offered by plaintiffs, to give the following testimony."

Then follows all the testimony given by the witness when on the witness-stand the second time, and this reason concluding as follows: " Such testimony being incompetent, immaterial, and irrelevant, she being a daughter of John C.

Staser, a devisee under his will and a party to this suit, being incompetent under the statute to testify to such facts, is further incompetent, immaterial, and irrelevant for the reason that it details a conversation about Clara Staser, who is not a party to the suit or heir of the testator or devisee under his will."

Section 496, R. S. 1881, makes all persons, whether parties to, or interested in, the suit, competent witnesses in civil actions or proceedings, except as otherwise provided by statute. Section 499 provides that in all suits by or against heirs or devisees, founded on a contract with, or demand against, the ancestor, to obtain title to or possession of property, real or personal, of or in right of such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor.

In the case of *Lamb* v. *Lamb*, 105 Ind. 456, it was settled that, in a proceeding like this to contest a will, the heirs and devisees are competent witnesses as to the mental condition of the testator.

As Mrs. Hogan was not an expert witness, before she could give her opinion as to the mental condition of the testator, it was necessary that she should state the facts upon which such opinion was based. This, of necessity, included the conduct of the testator, what he said, the manner in which he conducted himself, and might, perhaps, include his full history up to the time of his death.

Much of the testimony, therefore, given by Mrs. Hogan, if not all, was competent, and she was a competent witness as to the matters therein detailed by her. Under the form of objection here made the burden was thrown upon the court to watch her testimony, and when a question was asked, or an answer made, to which she was not competent to testify, the court was required to interpose an objection. We do not think such a burden could be imposed upon the court.

It is not error for the trial court to overrule an objection,

to the testimony of a witness made before such testimony is given, and when the court can not know what it will be. *Wolfe* v. *Pugh*, 101 Ind. 293. Nor is it the duty of the court to separate competent from incompetent evidence. That duty rests upon counsel. *Cuthrell* v. *Cuthrell*, 101 Ind. 375.

So, in the motion for a new trial, the court, in order to ascertain whether any illegal testimony had been permitted to go to the jury, would be required to look through all the testimony of the witness, and separate the legal from the illegal. This is a duty that the court can not be required to perform. Causes for a new trial must be assigned with clearness, certainty, precision, and particularity. *Louisville, etc., R. W. Co.* v. *Thompson*, 107 Ind. 442; *Bayless* v. *Glenn*, 72 Ind. 5; *Coryell* v. *Stone*, 62 Ind. 307; *Grant* v. *Westfall*, 57 Ind. 121; *Ball* v. *Balfe*, 41 Ind. 221; *Wright* v. *Potter*, 38 Ind. 61.

With the sixteenth reason for a new trial are set out thirty-eight pages of evidence, embracing all the testimony of the witness while on the stand, and to require the court to examine this mass of testimony with a view of ascertaining whether any that was incompetent had crept into the record would be to impose upon the court a burden wholly unwarranted by the law. In our opinion no question is presented by the record as to the competency of the testimony given by Mrs. Hogan.

The appellees called one Maidlow, and, over the objection of the appellants, proved by him a conversation with the testator in relation to the testator's views upon the subject of making wills, in which he spoke strongly against giving one child a larger share than another.

It is conceded by the appellants, in their brief, that this testimony would have been proper if it had been confined to what the deceased said in relation to the disposition of his own property, but it is contended that he was talking about the dispositions of property made by others. But we un-

derstand that he was speaking on that occasion of a line of conduct to be pursued by himself as well as others, and we are unable to perceive any valid objection to the evidence. The same objection was made to the testimony of Heston and Wright, who testified to similar conversations, but what we have already said disposes of the objection.

The appellees called one Mesker as a witness, who testified as to his acquaintance with the testator, and that during the last year of his life his health was failing very much; that his conversation shifted more than it did in former years, and that there was a change in him.

On cross-examination the appellants asked the witness this question: "Mr. Mesker, would you have taken a note from John C. Staser during the last year of his life? Did you ever hear anybody in his life question his sanity?"

The court sustained an objection to these questions. We do not think the court erred in this ruling. We are unable to perceive how it could be material what the witness would or would not have done, or how the opinions of others, not under oath, as to the sanity or insanity of the testator could be admissible in evidence.

The appellees were permitted to prove by Mrs. Yeager, who is the stepmother of three of the testator's grandchildren, who were disinherited by the will in controversy, that the deceased always greeted and treated her as nicely as any one could treat a daughter.

Under the issues in this cause, it was not improper to prove the relations that existed between the testator and his family, that is, whether they were friendly or otherwise. We do not think the court erred in admitting this testimony.

The appellees called Mrs. Anna Stockfleth, who is a devisee under the will of the deceased, and one of his heirs, and, over the objection of the appellants, proved by her substantially the manner in which the family of the deceased live together; that the deceased farmed and practiced law; that he loaned money in both large and small amounts until

some time before his death; that the last year of his life he did not attend to his own business, but that most of his business was transacted by his son Clinton; the last year of his life he seemed childish, and was guilty of conduct, and held conversations, which indicated that his mind was failing, and that Clinton Staser was not on friendly terms with his sister, Mrs. Hogan.

We think that this witness was competent as to all matters appearing in her testimony. *Lamb* v. *Lamb, supra.*

If she was competent to give an opinion as to the mental condition of the testator, she was competent to give a statement of all she knew about him both before and after it is claimed that his mind failed, together with what he did and said, and the change, if any, in his manner, with a view of enabling the jury to weigh such opinion when given; indeed, without such statement she could not be permitted to give her opinion.

Mrs. Aiken, over the objection of the appellants, was permitted to testify to a conversation between herself, the testator, and his son Clinton in the year 1879. The conversation tended to show that the memory of the deceased was at that time failing, and that the son had great influence over his conduct. The objection urged is, that this evidence is too remote. It was proper to show the condition of the testator's mind at any time, to enable the jury to determine its condition at the date of the will. It was also proper to show what influence, if any, the son had over the testator, under the issue that the will was procured by undue influence.

The appellants called one Litchfield, a justice of the peace, and proved by him that in the year 1885 the testator conducted the trial of a cause before him, and then offered to prove by him that the deceased managed the case "well and shrewdly." The court refused to permit this evidence, and in this we think there was no error. It called for the mere opinion of the witness. The witness was allowed to detail all that the deceased did in the management of the cause, and

to give his opinion as to the condition of the testator's mind at that time.   This was all the appellants were entitled to.

The appellants called Franklin Staser as a witness in their behalf, and after they had examined him in chief, the appellees, while he was on cross-examination, for the purpose of impeaching his testimony, propounded to him the following questions:  " In the spring or summer before your father died, the spring of 1885, at or near the station where your father lived, on the E. & T. H. R. R., in Vanderburgh county, if you did not say to Jake Clouder, in a talk about a ditch that was being dug on the place there, called the ' Singer ditch,' and in talking about your father's action and conduct about that ditch, say, ' Pay no attention to the old man ; he is old and childish ? ' "

After having fixed the time, place, and conversation this question was also asked the witness :  " Did you not say to Fred, ' I have got to leave home,' and did not Fred ask you, ' Why, what is the matter? ' and did you not say, ' It is owing to pa ; he is going crazy, from what I saw this morning,' and Fred asked you, ' Why, what is it ? ' and you said, ' I saw pa in Kate's room ; I caught him at it ; he pointed his finger at me and said, " I will fix you for this." ' Did you say that to your brother Fred ? "

The witness answered each of these questions in the negative, and the appellees were permitted, by way of impeachment, to show that he did make the statements attributed to him.  It is urged that the matter thus called out did not tend to contradict any matter to which the witness had testified in chief, and that, therefore, the court erred in admitting it, but in this we think the appellants are in error.   The witness, in his examination in chief, had testified to his intimate relations with the testator, and had given a detailed account of his conduct, business habits, and conversation, and had concluded by stating that in his opinion the testator was a person of sound mind.   His statements out of court that the testator was childish, and that he was going crazy, were in

conflict with his evidence in court, to the effect that the testator was of sound mind. We do not think the court erred in admitting this evidence.

Clinton Staser was called as a witness for the appellants, and after his examination in chief, and while on cross-examination, the appellees propounded to him this question : "Before your father's death, if in the latter part of September, 1885, in a buggy, on the way to the homestead with your sister Anna, in Vanderburgh county, if you didn't say to your sister Anna, ' I tell you, Kate Hogan is going to make trouble in our family some day. I know I will be left to settle pa's business, and I don't want to have any trouble with her. I am going to have a talk with him, and whatever he wants to leave to the Catholic church I am going to have him set apart to her.' "

The witness denying the statement attributed to him, the appellees were permitted to prove that he did make such statement.

It is contended by the appellants that this related to a collateral matter in nowise connected with the witness's testimony in chief, and that the court erred in admitting it.

It is further contended that the witness could not have been asked the question here put, in his examination in chief, because undue influence can not be proved by the declarations of one of the devisees, and we are referred to the cases of *Hayes* v. *Burkam,* 67 Ind. 359, and *Ryman* v. *Crawford,* 86 Ind. 262.

On the other hand, it is contended by the appellees that the question was asked, and was admissible, for the purpose of showing that there was ill-will between the witness and Mrs. Hogan.

Mrs. Hogan was one of the plaintiffs in the case, and was deeply interested in setting aside the will in controversy, she being entitled under the will to a very small sum as compared with what she would receive if the will were set aside. It appears that the testator was bitterly opposed to her mar-

riage, and one of the reasons urged for such opposition was that her husband was a Catholic. It is contended by the appellees that the idea which the witness intended to convey by the remark attributed to him was, that he intended to induce his father to disinherit Mrs. Hogan.

The general rule of law is, that when a witness is cross-examined on matters collateral to the issues, his answer can not be subsequently contradicted by the party putting the question. The test of whether a fact inquired of on cross-examination is collateral is this: Would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea? *Welch* v. *State*, 104 Ind. 347; *City of South Bend* v. *Hardy*, 98 Ind. 577. This rule, however, has no application where it is sought to show that the witness has an interest in the case, or that he is hostile to one of the parties to the suit, and if, on such cross-examination, the witness denies such hostility he may be contradicted by his own statements or acts. *Scott* v. *State*, 64 Ind. 400; *Johnson* v. *Wiley*, 74 Ind. 233; *Stone* v. *State*, *ex rel.*, 97 Ind. 345; Wharton Crim. Ev., section 484; Roscoe Crim. Ev. 102; *Newton* v. *Harris*, 6 N. Y. 345.

In our opinion, this evidence was admissible for the purpose of showing the hostility of the witness to Mrs. Hogan, one of the parties to the suit. Other declarations of this witness were admitted in evidence for the same purpose, but what we have said disposes of the objection thereto, and to other objections in the record of like character.

During the argument of the cause, and while making the closing argument, G. V. Menzies, one of the counsel for the appellees, read to the court in the presence of the jury the following extract from *Bowman* v. *Phillips*, 47 Ind. 341: "It may be conceded, that a man with a sound mind may dispose of his property as he pleases; but if he does so in violation of all nature's laws, justice, and humanity, juries and courts will resort even to technicalities to prevent a great wrong." Before reading, said Menzies said to the

jury : " I want you to listen to what the Supreme Court has said in a case like this," and after reading he turned and repeated the language above quoted to the jury, and then said: " But the plaintiffs have abundance of evidence to set this will aside."

Before reading the above extract, the appellants objected to counsel's reading law to the jury, and the court sustained the objection, but decided that said counsel might read to the court from the decision of the Supreme Court, and announced that the court would give the law to the jury.

Afterwards the said Menzies, in the course of his argument, said he would read to the jury instruction No. 7, which had been asked for by the defendants, and which was marked as given, and which was in fact given by the court to the jury. He then read instruction No. 7, as follows :

" No. 7. A will can not be impeached because of injustice in a moral sense. If the testator be of sound mind, he may, from caprice, causeless malice, or foolish prejudice, cut off his children and give his property to strangers, or give his property to some of his children to the exclusion of others. The moral injustice or caprice in such cases may be considered as a circumstance on the question of insanity, but if from the evidence it be clear that the testator was sane, the caprice or injustice is of no moment whatever. The testator, unless of unsound mind, must be allowed to make his own division and distribution of his property."

After reading said instruction he said to the jury : " This is the law, and the court will give it to you as the law in the case, but it is on the border-land of the law. His Honor from the bench despises it. It is a relic of barbarism, and ought to be expunged from the law of the land."

During this comment, counsel for the defendants interrupted counsel for plaintiffs for thus commenting upon this instruction, whereupon the court said to Major Menzies, in the presence of the jury : " You admit that this instruction is the law in the case ? " to which counsel for plaintiffs re-

sponded, in the presence of the jury : " Yes, it is the law in the case; your Honor has the right to give it to the jury, and I have no fault to find with your Honor for giving it."

Thereupon counsel for the plaintiffs proceeded with his argument, and did not comment further upon the instruction, and no ruling was asked for or made by the court in reference to the matter.

It is clear, we think, that no question is presented for our consideration as to the conduct of counsel in commenting upon the instruction above set out. The court was not asked to take any action in the matter; no ruling was made and no exception reserved. It is now settled that in order to save any question in relation to the misconduct of counsel during the progress of the trial, the court must be called upon to correct the injury done; if the court refuses to do so the party injured may except, and thus save the question involved for the consideration of this court. If the court does all in its power to correct the injury, no question can be presented to this court unless the injured party moves to discharge the jury. *Grubb* v. *State,* 117 Ind. 277; *Kern* v. *Bridwell,* 119 Ind. 226; *Coleman* v. *State,* 111 Ind. 563; *Henning* v. *State,* 106 Ind. 386.

As the court may at any time before the jury retires add to the instruction prepared and settled, it must have the power to hear argument upon legal questions, and hear authorities. As to when and as to the extent to which such argument shall be had, must, of necessity, depend upon the discretion of the court.

Unless it appears that such discretion has been abused, and that the party complaining has been injured, the cause should not be reversed on account of the exercise of such discretion.

We do not think it so appears in this case.

The instructions are quite lengthy, and no good purpose would be subserved by setting them out. They cover every phase of the case, and, when taken as a whole, fairly state the law as applicable to the case as made by the evidence.

It is true, that the first instruction given on behalf of the appellees is somewhat obscure, but when taken in connection with the other instructions we do not think the jury could have been misled thereby.

We think that the essential elements of the law contained in the instructions asked by the appellants, and refused by the court, so far as they state the law correctly, are contained in the instructions given. Under such circumstances the cause will not be reversed for refusal to give the instructions asked. *Garfield* v. *State,* 74 Ind. 60; *Barnett* v. *State,* 100 Ind. 171; *Everson* v. *Seller,* 105 Ind. 266.

At the term of court at which this case was tried, the regular judge, not being able to attend, appointed Hon. R. D. Richardson to hold the court in his stead. The verdict of the jury was returned on the last day of the term, and on the first day of the next term the motion for a new trial was filed. The regular judge was present at the meeting of the court at which the motion for a new trial was filed, but over the objection of the appellants he declined to hear the motion, and the said R. D. Richardson heard and disposed of the same over the objection and exceptions of the appellants.

It is contended by the appellants that the authority of the Hon. R. D. Richardson to act in the case ceased with the term at which it was tried, and that his action in overruling the motion for a new trial and rendering judgment on the verdict was without authority and void.

On the other hand, it is contended by the appellees that the said Richardson having once acquired jurisdiction to hear and dispose of the case, retained such jurisdiction until the cause was finally disposed of.

It must be manifest to every one that the regular judge could not intelligently hear and dispose of the motion for a new trial in this cause. No bill of exceptions containing the evidence, or setting forth the rulings of the special judge, had been prepared and signed, so that the regular judge would be

unable to determine whether the evidence supported the ver-
dict, or whether the party claiming the new trial had been
able to secure a fair and impartial trial of his cause.   Prior
to the statutes of ·1881 the law required motions for a new
trial to be filed at the term at which the cause was tried, so
that no difficulty of the kind here involved could arise, for
the special judge could compel a final disposition of the cause
at that term.   Now, however, where the verdict is returned
on the·last day of the term, the motion for a new trial may
be filed on the first day of the next succeeding term.

Under the old practice it was held that the authority of a
special judge terminated with the term at which he was ap-
pointed.   *Greenup* v. *Crooks*, 50 Ind. 410.

It was held, however, that a special judge might give time
and sign a bill of exceptions after the close of the term at
which he was appointed.   *Lerch* v. *Emmett*, 44 Ind. 331.

It is said in this case that the special judge had all the
power over it that the regular judge would have had, had he
not been disqualified to hear it.

. In the case of *Beitman* v. *Hopkins*, 109 Ind. 177, it was
held that the special judge might sign the record at a term
subsequent to that at which he was appointed.   In that case
it was said by the court : ·" We think, however, that under
section 415, R. S. 1881, the special judge had authority to
pass upon appellant's motion, and to sign the record at
the time he did.   The statute, it will be observed, is an en-
largement upon prior statutes, and was intended to clothe
special judges with authority to act in cases in which they
are called to preside, until ·the final judgment is rendered,
entered up, and signed."

We think that where parties voluntarily consent to try
their cause before a special· judge they should be held as con-
senting to his making a final disposition of the same; for in
the very nature of things no one else can intelligently dis-
pose of it.   We think that in such a case the provisions of

section 415, R. S. 1881, should be held to apply, without regard to the reason for appointment.

We have been urged to pass upon the question as to whether the bill of exceptions is in the record, but as we find no error in the record for which the cause should be reversed, treating the bill as part of the record, we deem it unnecessary to pass upon that question.

Judgment affirmed.

Filed June 8, 1889.

### ON PETITION FOR A REHEARING.

COFFEY, J.—An earnest petition, supported by an able brief, has been filed in this cause praying for a rehearing.

In view of the importance of the case, and of the numerous questions involved in it, we have again gone carefully over the voluminous record in the cause, and find no reason for changing our opinion upon any of the questions decided in the original opinion.

It is claimed, however, that there are some questions involved in the case which were not decided in the opinion heretofore handed down. It is earnestly argued that there is a total failure of evidence to establish the charge of undue influence. We did not, when considering the case originally, nor do we now, deem it necessary to pass upon that question in determining whether or not the evidence supports the verdict. The complaint charges both mental incapacity and undue influence. The evidence tends to support the charge of mental incapacity, and as the verdict is general it will withstand an attack upon the ground that it is not supported by the evidence.

It is claimed also that the third instruction given by the court, at the request of the appellees, is erroneous and must have misled the jury. This instruction, as it comes to us, is somewhat obscure, but we can not place upon it the construction claimed by the appellants. There is evidently the

omission of some word or words, either in drafting the instruction or in making a copy of it. Without supplying such words the instruction is wholly without meaning. Supplying the words necessary to give the instruction any intelligent meaning, we understand it to inform the jury that, as a general rule, the symptoms of insanity are, in a degree, incapable of description, but are sometimes quite obvious. They may exist in such a subtle form as to elude the observation of the most experienced physician. Whether this be so, as also the belief in the existence of mere illusion or hallucinations, the creatures purely of the imagination, such as no sane man could believe in, are questions of fact, as well as the proper inference arising upon them, for the jury; and they may furnish unequivocal evidence of insanity. If they do, and enter into the execution of a will, it may be avoided for partial insanity of the testator. Even after supplying the words necessary to give this instruction meaning, it can not be said that it is free from criticism; but however this may be, the instruction attempts to announce a merely abstract principle of law, and when construed with the other instructions in the cause, there is no reasonable ground for the belief that it misled the jury.

At the proper time the appellants asked the court to give to the jury the following instruction: " The court instructs the jury that there is no evidence in this case conducing to show that the will in contest was procured by undue influence, and upon that issue they should find for the defendants."

In cases where the evidence for the plaintiff is of such a character as that, taking it as true, and giving to it all the inferences that may be legally drawn therefrom, it would not support a verdict in his favor, the court may direct the jury to return a verdict for the defendant. *McClaren* v. *Indianapolis, etc., R. R. Co.,* 83 Ind. 319; *Koerner* v. *State,* 98 Ind. 7.

But in this case it can not be said that there is no evidence,

either direct or circumstantial, tending to prove undue influence. There is some evidence tending in that direction, but whether it is sufficient to sustain a verdict upon the charge of undue influence we are not called upon in this connection to decide. The instruction under consideration required the court to tell the jury that there was no evidence conducing to prove undue influence. We think the court did right in refusing to say to the jury that there was no evidence tending to prove undue influence. Had the court been asked to instruct the jury that there was not sufficient evidence in the cause to prove the charge of undue influence, we would feel called upon to decide the question thus presented, but as no such instruction was asked the question does not arise.

A number of interrogatories was submitted to the jury by the appellants and answered. It is not claimed that the answers to these interrogatories are in conflict with the general verdict, but it is contended by the appellants that the answers to the interrogatories are not supported by the evidence. It is contended that such an open disregard of the evidence, in particular and material things, as is exhibited in this case, inexorably undermines the general verdict, and requires that it should be set aside as an unsupported verdict.

The object sought to be attained in putting interrogatories to the jury is to elicit from them special answers to questions of fact involved in the case, necessary to a correct application of the law to the facts in the case under investigation. For this reason, if the jury return answers to special interrogatories which disclose facts inconsistent with the general verdict, such answers will control the general verdict, and the court will render judgment according to the special facts found, notwithstanding such general verdict. If the jury should return a general verdict for one of the parties, and should answer interrogatories disclosing facts inconsistent with the verdict, it would then be necessary to inquire whether such answers were, or were not, supported by the

evidence. If it found that they were not supported by the evidence, as the court could not ignore such answers, it would undoubtedly be its duty to grant a new trial, as the ends of justice could be reached in no other way. *Murray* v. *Phillips,* 59 Ind. 56 ; *Ohio, etc., R. W. Co.* v. *Selby,* 47 Ind. 471. But we have no such case here. The answers to special interrogatories are consistent with the general verdict of the jury. The motion is for a new trial, assigning as a reason that the verdict of the jury is not supported by the evidence. In such case the attention of the court is not called to the interrogatories and the answers thereto, but it is directed to the evidence in the cause. It is the duty of the court to examine the evidence, and if it supports the general verdict, the motion should be overruled, without any regard to the manner in which the answers to interrogatories are made.

In the case of *Ohio, etc., R. W. Co.* v. *Selby, supra,* the appellant moved for a new trial on the ground that the answers to interrogatories were not supported by the evidence, and this court said : " If the general and special verdicts are consistent with each other, then both should stand. If they are inconsistent, and the special verdict is not supported by the evidence, the appellee, and not the appellant, had the right to complain. * * * The general verdict includes all that is in the special finding."

In a case like this, where there is nothing in the record to indicate that the jury did not base its verdict upon the charge which the evidence tends to support, we think it wholly immaterial whether the answers to interrogatories addressed to another branch of the case are supported by the evidence or not supported. If the general verdict is supported by the evidence, in such case, the motion for a new trial, assigning for reason that the verdict is not so supported, should be overruled.

After a second examination of the record in this cause, and a careful consideration of all the questions involved, we feel

warranted in re-affirming that there is no error in the record for which the judgment of the circuit court should be reversed.

