COMMONWEALTH *vs.* ROBERT DENSMORE & others.

On the trial of an indictment for manslaughter, committed in an affray, declarations of the deceased made several hours after receiving the injuries from which he died, though not made in view of approaching death, are not admissible as evidence in favor of the defendants, for the purpose of showing the circumstances of the affray.

On such trial, the widow of the deceased identified the prisoners as among the persons present at the affray.  *Held*, that it was incompetent to contradict her by evidence that her husband, in her presence, two or three days after the affray, declared his ignorance who the parties were, and that she made no reply.

If in such case it appears that the affray occurred late at night, and after the deceased had been called up out of bed, and the prisoners contend that they went to his house for the purpose of getting liquor to drink, evidence is incompetent, on their behalf, to show that the deceased had frequently sold liquors late at night, and had been called up for that purpose, without making objection.

INDICTMENT for manslaughter of Jacob Kreitz, by beating him in an affray.

At the trial in the superior court, before *Rockwell*, J., Kreitz's wife testified, for the Commonwealth, that after midnight some persons knocked at the door of his house, and called for him, he having retired · and he asked them what they wanted, and the reply was for him to open the door; that he got an axe, and she got a stick, and she opened the door and he stepped out, asked them what they were doing there at that time, and threatened to

use the axe on their heads if they did not leave; that after some further talk he was attacked by them; that they soon left, and were followed a short distance by him, for the purpose of identifying them, as the Commonwealth contended, and another affray arose, and he was considerably injured and died in twelve days. She also identified the defendants as among the persons there.

It appeared that Kreitz kept a place in his house where liquors were sold. The defendants contended that they went there to get beer to drink, and that while quietly parleying with him for admission Kreitz and his wife assaulted them, and Kreitz followed them into the street to assault them, and did assault them there; and, among other evidence to prove this, offered the declarations of Kreitz made the next morning, at about half past seven o'clock; but these declarations were excluded.

The defendants also, for the purpose of contradicting Mrs Kreitz, offered the declarations of her husband, made two or three days after the affray, as to how the affray begun, and his ignorance of who the parties were; and the witness testified that she stood near and heard these declarations, and took part in the conversation, but made no reply to or comment upon these particular declarations. But the evidence was excluded.

The defendants also offered to prove that Kreitz had frequently sold liquors late at night, and had been called up for that purpose without making objection; but this was excluded.

The jury returned a verdict of guilty, and the defendants alleged exceptions.

*W. Allen, Jr.,* for the defendants. The declarations of Kreitz as to the circumstances of the affray were declarations of a deceased person, whose right the Commonwealth asserts, who had peculiar means of knowledge, and whom if living the Commonwealth would have been bound to call as a witness, made at about the time and under the influence of the principal fact, in derogation of his right and against his interest. They were therefore admissible. 1 Greenl. Ev. §§ 120, 127, 131, 147, 148, 155. *Higham* v. *Ridgway,* 2 Smith's Lead. Cas. (6th Amer. ed.) 330–352. The evidence to contradict Mrs. Kreitz was competent.

Her silence was competent evidence of her assent to the correctness of her husband's statements. *Commonwealth* v. *Galavan*, 9 Allen, 271. Proof that Kreitz was called up by his own license and permission was competent, and the evidence offered tended to prove this.

*Reed*, A. G., for the Commonwealth.

Bigelow, C. J. The rulings of the court, rejecting the evidence offered in behalf of the defendants as set forth in the exceptions, were clearly right.

1. The declarations of the deceased, on whom the homicidal assault is alleged to have been committed, came within the class or description denominated hearsay evidence. Nor were they made under such circumstances as to bring them within the exceptions to the rule which excludes such evidence as incompetent. They were not uttered so nearly contemporaneously with the principal fact as to constitute part of the *res gestæ*. They were uttered several hours after the assault was committed, and were in the nature of a narrative of a past transaction. *Lund* v. *Tyngsborough*, 9 Cush. 36. *Commonwealth* v. *Hackett*, 2 Allen, 136. They were not shown to have been made in the consciousness and expectation of approaching death, so as to be admissible as dying declarations. Nor were the statements of a nature to be properly designated as declarations of a party made in derogation of his right and against his interest, which the Commonwealth are endeavoring by this prosecution to assert and maintain. In the first place, such declarations to be admissible as evidence must be such as to contravene the pecuniary interest of the party making them, or to disparage some title or interest in property of which he was in possession when they were uttered. We are not aware that the exception has ever been extended further, so as to render competent declarations which are not otherwise against the interest of the party who made them, except that they tend to throw on himself some degree of blame or criminality in relation to a particular transaction, and to exonerate others therefrom. No case was cited by the counsel for the defendants, nor do we know of any authority, which gives countenance to any such extension of the

exception, by which hearsay evidence is deemed to be admissible. On the contrary, all the approved text writers state the exception with the limitation above expressed. Rosc. Crim. Ev. 26. 1 Stark. Ev. (4th Amer. ed.) 45. 1 Greenl. Ev. § 109.

But, aside from this, we do not see that the deceased stood in any such relation towards the Commonwealth as to render his declarations admissible as evidence. It cannot be properly said that in the prosecution of offences, *mala in se*, the Common wealth asserts a private right or maintains an individual interest, in any such sense as to be affected or bound by hearsay statements of those who may have been the victims or objects of a criminal act on their property or person. There is no such legal identity or privity between them and the Commonwealth as to render their statements admissible in behalf of those who are charged with the commission of a crime.

2. Evidence of the conversation which took place in the presence of the wife of the deceased does not appear to have been competent. The only ground on which it could in any view have been admissible was, that it tended to contradict the testimony which she had given upon the trial. But the statements of third persons in her presence could not be let in for this purpose, unless they were such as to call for some reply from her, or necessarily to lead to the inference that silence on her part was an implied assent to the facts stated in her hearing. There is nothing in the exceptions to show that the declarations offered in evidence were of this character. *Commonwealth* v. *Kenney* 12 Met. 235. *Larry* v. *Sherburne*, 2 Allen, 35.

3. We cannot see that evidence that the deceased had, previous to the night on which the affray took place, been frequently called up at a late hour for the purpose of selling liquors was at all relevant or material to the issue.

*Exceptions overruled.*