[No. 10,005.]

## THE PEOPLE v. JAMES McLAUGHLIN.

STATEMENTS OF PERSON SINCE DECEASED, AS EVIDENCE.—A defendant indicted for murder cannot introduce in evidence, on his own behalf, statements of the deceased concerning the circumstances attending the difficulty in which he was wounded, made three days after he was wounded, but when he was in his right mind and did not expect to die.

IDEM.—It is not intimated that such statements would be admissible as evidence, even if they had been dying declarations of the deceased.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

The facts are stated in the opinion.

*George W. Tyler*, for Appellant.

*Attorney General Love* and *C. W. Darwin*, for The People.

By the Court, WALLACE, C. J.:

The prisoner, convicted of the crime of murder in the second degree, brings this appeal from the judgment rendered against him. The indictment alleges the offense to have been committed in the felonious killing of John Hughes, at the City and County of San Francisco, and it appears by the bill of exceptions found in the records that at the trial the prisoner called one Fox as a witness, and proposed to prove by him that Hughes, three or four days after receiving the knife wound of which he afterwards died, while he was "in his right mind and not expecting to die," had made certain statements concerning the circumstances attending the difficulty in which he had been wounded, which statements, it is claimed, tended to the exculpation of the prisoner. To the introduction of this evidence objection was made by the District Attorney, on the ground that such statements made by Hughes amounted to mere hearsay testimony, and the ruling of the Court below in sustaining

this objection presents the only point relied upon for a reversal of the judgment.

No error was committed in excluding the statements of Hughes. There is no pretense that they were part of the *res gestæ*, nor that they were "dying declarations" of the deceased. We are not to be understood, however, as intimating that they would have been admissible *in favor of the prisoner*, even had they been of the latter character. It is true that it is asserted in some of the text books that they would, but the adjudicated cases hardly support the assertion. Thus, in *United States* v. *Taylor*, 4 Cranch C. C. R. 338, upon indictment for murder, the exceedingly meager report of the case states that the dying declarations of the deceased having been given in evidence against the prisoner, a new trial was granted him "upon newly discovered evidence that the deceased had a dirk, and said if it had not been for that this affair would not have happened." Whether what the deceased had said, and upon which, in part, the new trial was granted, was of the *res gestæ*, or part of his declarations *in extremis*, does not distinctly appear. So, in *Rex* v. *Scaife*, 1 Mood & Rob. 551, which was determined three years later, the counsel for the prisoner, being called upon by the Court, admitted that they had been unable to find a case in which the declarations *in extremis* of the deceased had been allowed in favor of the prisoner; but the indictment being for manslaughter, the Court, after some hesitation, admitted the evidence, observing "that it might have an influence on the amount of punishment." In other cases their admissibility will be found to have been assumed for the purpose of illustration or argument, rather than decided. No such question arises here, however, and we express no opinion upon the point.

It is argued by the counsel for the prisoner that the statements of Hughes, the deceased, though not part of the *res gestæ*, nor made *in extremis*, are, nevertheless, admissible in

his favor upon trial for felonious homicide. No direct authority for this position is cited, and our own researches lead us to believe that none exists. The reasoning of counsel by which it is supported, or attempted to be, rests upon a supposed analogy to the rule of evidence which would be applicable to a civil action brought by Hughes to recover damages for the private injury he received in the infliction of the wounds at the hand of the prisoner. We think, however, that there is no analogy between the supposed case and this case.

In the civil action, had one been instituted, the purpose would have been the redress of the civil injury by the recovery of pecuniary damages, and in such case the admission of Hughes, the plaintiff on the record, and the real party in interest, touching the subject of his claim, would be clearly competent as evidence upon the part of the defendant. But the self-same rule would exclude the declarations of every person not a party, nor identified in interest with a party on the record; and it is clear that in a criminal prosecution, the purpose of which is the vindication of a public wrong, and in which the people in their sovereign capacity are the sole party plaintiff upon the record, the injured person named in the indictment is not either a party to the record nor a party in interest within the sense of the rule relied upon by counsel.

But it is said that these statements of Hughes, being the declarations of a person since deceased and made against his interests, are therefore admissible. This is the same view which was advanced by the prisoner's counsel, but rejected by the Court in the *Commonwealth* v. *Densmore*, 12 Allen, 535, in which the prisoners on trial for the crime of manslaughter offered the declarations of Fereitz, the deceased, made two or three days after the affray in which he had been injured, and which tended to the exculpation of the prisoners. In their opinion in that case the Supreme Ju-

dicial Court of Massachusetts say: "The declarations of the deceased, on whom the homicidal assault is alleged to have been committed, came within the class of description de-. · nominated hearsay evidence. Nor were they made under such circumstances as to bring them within the exceptions to the rule which excludes such evidence as incompetent. They were not uttered so nearly cotemporaneously with the principal fact as to constitute part of the *res gestœ.* They were uttered several hours after the assault was committed, and were in the nature of a narrative of a past transaction. *Lund* v. *Tyngsborough,* 9 Cush. 36; *Commonwealth* v. *Hackett,* 2 Allen, 136.) They were not shown to have been made in the consciousness and expectation of approaching death, so as to be admissible as dying declarations. Nor were the statements of a nature to be properly designated as declarations of a party made in derogation of his right and against his interest, which the Commonwealth are endeavoring by this prosecution to assert and maintain. In the first place, such declarations to be admissible as evidence must be such as to contravene the pecuniary interest of the party making them, or to disparage some title or interest in property of which he was in possession when they were uttered. We are not aware that the exception has ever been extended further, so as to render competent declarations which are not otherwise against the interest of the party who made them, except that they tend to throw on himself some degree of blame and criminality in relation to a particular transaction and to exonerate others therefrom. No case was cited by the counsel for the defendants, nor do we know of any authority which gives countenance to any such extension of the exception, by which hearsay evidence is deemed to be admissible. On the contrary, all the approved text writers state the exception with the limitations above expressed. (Rosc. Crim. Ev., 26; 1 Stark Ev., 4 Am. ed., 45; 1 Greenl. Ev., Sec. 109.)

" But, aside from this, we do not see that the deceased stood in any such relation towards the Commonwealth as to render his declarations admissible as evidence. It cannot be properly said that in the prosecution of offenses, *mala in se,* the Commonwealth asserts a private right or maintains an individual interest in any such sense as to be affected or bound by hearsay statements of those who may have been the victims or objects of a criminal act on their property or person. There is no such legal identity or privity between them and the Commonwealth as to render their statements admissible in behalf of those who are charged with the commission of a crime."

In *Hunt* v. *The People,* 3 Park Crim. R. 569, which was an indictment for the crime of manslaughter in the second degree, under the New York statute, committed in effecting an abortion upon one Hannah Lawson, the prisoner proved that several days before the death of deceased—it not appearing that she was then apprehensive that she could not recover—she had stated that the miscarriage, from the effects of which she was then suffering, was produced by *natural causes.* The evidence had been admitted without objection at the trial; but it was conceded upon all hands that, as a mere admission of the deceased tending to exculpate the prisoner, it might have been well objected to as being hearsay.

In *People* v. *McCrea,* 32 Cal. 100, too, it was held here that the admissions of the party injured, tending to show the innocence of the prisoner, could not be allowed in evidence in his behalf. This, as being a direct determination of the point, and not in any wise distinguishable from the case at bar, was of itself, perhaps, sufficient to authorize an affirmance of the judgment here; but, owing to the importance of the question, not only to the prisoner, but as one likely to arise in other cases, we have thought to bestow upon it such

further examination and research as our time would permit. The judgment is affirmed.

Mr. Justice RHODES did not express an opinion.