## SHIELDS v. THE STATE.

[No. 17,739.   Filed February 3, 1897.]

JURY.—*Qualification of Jurors. —Examination.—Question of Fact.*— The Supreme Court will not interfere with the determination of the trial court of the question concerning the qualification of jurors involving questions of fact, merely because the answers of the juror are, or seem to be, inconsistent or incoherent. *pp. 397–399.*

SAME. — *Qualifications of Jurors. — Examination. — Exceptions. — Criminal Law.*—To present properly any question as to the qualifications of a juror to sit in a criminal cause, some one or more of the statutory causes provided by section 1862, Burns' R. S. 1884 (1793, Horner's R. S. 1897), must be stated to the trial court; an objection stated in general is properly overruled. *pp. 398–400.*

WITNESSES.—*Cross-Examination.—Discretion of Court.*—The extent to which the cross-examination of a witness may be carried rests within the discretion of the trial court, and the Supreme Court will not interfere therewith, on appeal, unless a clear abuse of such discretion is shown. *pp. 401, 402.*

CRIMINAL LAW.—*Evidence.—Hearsay.*—A person injured, whether living or dead, is not a party to a criminal prosecution therefor, and his admissions and statements are not evidence, either for or against the accused, unless of the *res gestae,* dying declarations, or threats; but are hearsay, the same as those of any other third person. *pp. 402–404.*

INSTRUCTIONS. — *Criminal Law. — Harmless Error. — Homicide.*— Errors committed in giving or refusing to give instructions concerning the offense of murder in the first and second degree, in the trial of a criminal cause, were harmless where the defendant was convicted of manslaughter. *p. 404.*

SAME.—*Criminal Law.—Manslaughter.*—An instruction that if the jury found from the evidence, beyond a reasonable doubt, that defendant, without malice, express or implied, and without premeditation, but voluntarily, upon a sudden heat took the life of deceased, in manner and form as charged in the indictment, they should find him guilty of voluntary manslaughter is not bad for failure to use the word unlawfully before the word took, where the indictment charged that defendant unlawfully, feloniously, and purposely killed and murdered deceased. *p. 405.*

SAME.—*Criminal Law.—Assault and Battery.*—An instruction in the trial of a cause of an assault and battery with intent to commit murder is not bad for failure of the court to use the word unlawful in referring to the touching of deceased by defendant, where the ele-

| | |
|---|---|
| 149 | 395 |
| 149 | 613 |
| 151 | 257 |
| 151 | 259 |
| 151 | 516 |
| 151 | 670 |
| 152 | 38 |
| 149 | 395 |
| 153 | 379 |
| 149 | 395 |
| 156 | 596 |
| 149 | 395 |
| 157 | 215 |
| f 157 | 444 |
| 149 | 395 |
| 160 | 455 |
| 149 | 395 |
| 161 | 42 |
| 161 | 295 |
| 149 | 395 |
| 163 | 496 |
| 149 | 395 |
| 164 | 270 |
| 149 | 395 |
| 165 | 183 |
| 165 | 536 |
| 165 | 669 |
| 149 | 395 |
| 169 | 501 |
| 169 | 502 |
| 170 | 213 |

ments stated therein were such that when applied to the evidence and construed with the other instructions as a whole, the jury were not misled as to the essential elements of the offense of assault and battery.  *pp. 405, 406.*

INSTRUCTIONS.—*Must Be Considered Together.*—Instructions are considered as an entirety, and not separately or in dissected parts, and even if some particular instruction, or some portion of an instruction, standing alone or taken abstractly, and not explained or qualified by others, be erroneous, it will afford no grounds for reversal.  *p. 406.*

SAME.—*Inaccuracies.—Technical Errors.*—Mere verbal inaccuracies in instructions, or technical errors in the statement of abstract propositions of law, furnish no grounds for reversal, when they result in no substantial harm to the complaining party, if the instructions, taken together, correctly state the law applicable to the facts of the case.  *pp. 406–410.*

SAME.—*Erroneous Instruction.—Harmless Error.*—The giving of an erroneous instruction is not reversible error when it appears that the substantial rights of the complaining party were not prejudiced thereby.  *pp. 410, 411.*

SAME.—*As to Character of Accused.—Criminal Law.*—An instruction to the effect that in doubtful cases evidence of good character is conclusive in favor of the party accused of the crime is improper, as under the law the jury are the exclusive judges of the facts and of the credibility of the witnesses, and if they have a reasonable doubt of the guilt of the accused he must be acquitted whether there is any evidence of his good character or not.  *p. 411.*

SAME.—*Numbering and Signing.*—It is the duty of the trial judge, under section 1892, Burns' R. S. 1894 (1823, Horner's R. S. 1897), to number and sign instructions given by him in the trial of a cause, yet a failure to do so will not authorize the reversal of the cause.  *pp. 411, 412.*

EVIDENCE.— *Weight Of.— Conflicting Evidence.— Criminal Law.*— Where in the trial of a criminal cause there was evidence given sustaining every material allegation in the indictment the Supreme Court will not reverse the cause because of conflicts therein upon some points.  *p. 412.*

CRIMINAL LAW.—*Excessive Punishment.—Constitutional Law.*—The provisions of section 16, article 1 of the constitution that cruel and unusual punishments shall not be inflicted, has reference to the statute fixing the punishment, and not to the punishment assessed by the jury within the limits fixed by the statute.  *pp. 412, 413.*

From the Blackford Circuit Court.  *Affirmed.*

*John Cantwell, S. W. Cantwell* and *L. B. Simmons*, for appellant.

Shields *v.* The State.

*W. A. Ketcham,* Attorney-General, *Elmer E. Stevenson, Merrill Moores* and *Jay A. Hindman,* for State.

MONKS, J.—Appellant was convicted of the crime of manslaughter upon an indictment charging him with murder in the first degree, in the killing of James Young. The only error assigned calls in question the action of the court in overruling the motion for a new trial.

One Harvey Ward, being called as a juror, was examined upon oath as to his qualifications to serve as a juror. He stated that he had formed and expressed an opinion as to the guilt or innocence of the appellant; that his opinion was formed from talking with his neighbors about the case, and he had read something about it in the newspapers; and that all he had heard was rumor, and from that he had formed his opinion; and that it would require some evidence to remove the opinion. During the early part of the examination he said that he did not believe that he felt able to render a fair and impartial verdict in the case according to the law and evidence, notwithstanding the opinion he had formed. At a later period of his examination he said he believed, notwithstanding the opinion he had formed, that he could try the case, and render a fair and impartial verdict on the law and the evidence. Afterwards, during the latter part of the examination, it is claimed by appellant that the juror said that he guessed he did not understand the question in regard to his ability to render a fair and impartial verdict according to the law and the evidence, which he had answered in the affirmative. At the close of the examination, appellant challenged the juror, and stated as the ground of challenge, "that he was not competent to serve upon said jury," which objection was overruled, and said Ward was afterwards sworn as a juror. Appellant insists that this ruling of the court

was prejudicial error, although appellant had not exhausted his peremptory challenges, citing *Brown* v. *State,* 70 Ind. 576. This question was decided the other way by this court in *Woods* v. *State,* 134 Ind. 35. And in *Siberry* v. *State, post,* 684, this court followed *Woods* v. *State, supra,* and *Brown* v. *State, supra,* and *Fletcher* v. *Crist,* 139 Ind. 121, were expressly overruled on this point. We are of the opinion, however, that no error was committed by the court in overruling appellant's challenge to said juror.

The statute provides eleven causes for challenge to persons called as jurors, one of which is that he has formed or expressed an opinion as to the guilt or innocence of the defendant. It is provided, however, that if the person called as a juror shall state that he has formed or expressed an opinion as to the guilt or innocence of the accused, that if it appear from the examination of the juror that such opinion is founded upon reading newspapers, or upon rumors or hearsay, and not upon conversation with witnesses of the transaction or reading reports of their testimony, or hearing them testify, and the juror shall state upon oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that he is impartial, and shall render such verdict, may, in its discretion, admit him as a juror to serve in such case. Section 1862, Burns' R. S. 1894 (1793, Horner's R. S. 1897). Under this section a question of fact was submitted to the trial court for its determination. It was shown that the opinion of the juror was based on rumors and newspaper accounts and hearsay. The juror said that, notwithstanding the opinion he had formed, he believed he could render a fair and impartial verdict upon the law and the evidence. There were some inconsistent answers to questions propounded. There

was nothing to show any bias or feeling on the part of the juror against the appellant or his defense.

It was within the power of appellant, by further examination of the juror, to have made clear to any one examining the record whether the juror did or did not understand the question as claimed by appellant. This was not done, and the trial court determined that question. The answers of the juror raised questions for the decision of the court, who saw the juror, his appearance, demeanor, manner, and conduct, and heard his answers, his voice and its tone; and from these he was very much better able to determine the meaning of the juror than any one who merely reads the questions and answers after they are reduced to writing. What may appear uncertain or indefinite to one reading the record may have been plain and clear to one who heard the examination of the juror, and saw his manner and conduct during such examination. For this reason this court cannot interfere with the determination of the trial court of the question concerning the qualifications of jurors, merely because the answers of the juror are or seem to be inconsistent or incoherent.

It was said by this court in *Walker* v. *State*, 102 Ind. 502, on p. 505: "Persons called to serve as jurors are often confused by the incisive and inquisitorial nature of the questions addressed to them touching their qualifications to act in that capacity, and, under a confusion thus induced, frequently give inconsistent, and even incoherent, answers. It is consequently, both just and reasonable that the judge who presides at the trial should be permitted to exercise large discretion in determining the weight and relative importance given to such answers."

In *Guetig* v. *State*, 66 Ind. 94, which was decided before the enactment of the present statute, which

gives the court a larger discretion, this court in speaking of the influence of rumors and hearsay evidence upon the mind of a juror, said: "In the case before us the qualified opinion of each juror objected to was formed upon hearsay evidence or newspaper reports, not upon facts known to the juror, and was evidently of a character that would readily yield to the contrary evidence. It does not seem probable to us that it could have affected the opinion of the juror with all the evidence before him in the case."

The trial court found, upon the evidence submitted that the juror was impartial, and would render a fair and impartial verdict upon the law and the evidence, and, in its discretion, admitted him as a juror, and we cannot say that the trial court abused the discretion conferred by the statute. The objection to the juror was properly overruled for another reason. Section 1862, Burns' R. S. 1894 (1793, Horner's R. S. 1897), sets out eleven distinct and separate causes for challenge to any person called as a juror in any criminal trial, and provides that there shall be no other cause for challenge. The cause of challenge stated was general and no one of the eleven statutory causes was pointed out to the court as being the one upon which appellant relied. It is well settled that all objections stated to the court must be specific and certain and not general. Elliott App. Proc., sections 293, 769, 770 and 771. To present properly any question as to the qualifications of the juror to sit in said cause, some one or more of the statutory causes should have been stated to the court. This much was due the trial court and the adverse party, and is necessary to the proper administration of justice. Elliott App. Proc., sections 769, 770; *People* v. *Walsh,* 43 Cal. 447; *People* v. *Renfrow,* 41 Cal. 37; *People* v. *McGungill,* 41 Cal. 429; *People* v. *Reynolds,* 16 Cal. 128.

Shields *v.* The State.

The next specification for a new trial is that the court erred in permitting the State to cross-examine Dr. Robinson, a witness for appellant, as an expert, when he had not been examined as such by appellant. Dr. Robinson testified in chief that he had been practicing as a physician and surgeon eighteen years; that, before the death of Young, he had attended him as a physician, and treated him for quinsy or tonsilitis; he testified as to his examination and medical treatment of Young, the nature of his sickness, his symptoms, the characteristics of quinsy or tonsilitis; what suppuration is, the prescription of chloral, the condition of Young's throat, the examination he made to determine whether Young was dead, the postmortem examination, the appearance and condition of the neck and throat of Young shown by the postmortem examination which he made at the request of the coroner, a description of the thorax, the meaning of congestion, a description of arterial and pulmonary blood and the difference between them, the pulmonary circulation, the condition of the heart with all its cavities, and whether the heart was of normal size, the condition of the stomach, the condition of the bowels, that they were healthy, the usual smell of a dead body, the color and condition of the throat, and that it had the color and characteristics of a healthy throat.

The examination of Dr. Robinson by appellant shows clearly that he was examined, not only as to his knowledge of the facts of the case, but also as a medical expert, the State therefore was entitled to cross-examine him as such, not only concerning the facts testified in chief, but to test his skill and knowledge as an expert. *Louisville, etc., R. W. Co.* v. *Falvey,* 104 Ind. 409, 414, 415, 417, 421.

VOL. 149—26

If said witness was unable to sustain himself on cross-examination, and the jury were convinced thereby that he was an·ignoramus, as insisted by appellant, this would not deprive the State of its right to cross-examine him. If the cross-examination did convince the jury that said witness possessed no skill or knowledge as a physician, and he had not testified as an expert, as insisted by appellant, then appellant was not harmed, because such cross-examination only affected his credibility as an expert witness, and not his credibility as an ordinary witness.

The cross-examination of witnesses, and the extent to which it may be carried necessarily rests in the discretion of the trial court, with which this court can not interfere, unless a clear abuse of such discretion is shown. *Wachstetter* v. *State*, 99 Ind. 290, 295; *Ledford* v. *Ledford*, 95 Ind. 283, 285; *Bessette* v. *State*, 101 Ind. 85, 88; *Hinchcliffe* v. *Koontz*, 121 Ind. 422, 425; *Boyle* v. *State*, 105 Ind. 469, 475. We cannot say that there was an abuse of that discretion in this case.

During the progress of the trial, appellant propounded certain questions to one of his·witnesses, to which objections were sustained by the court. Appellant thereupon offered to prove by said witness that he had seen the deceased take a large quantity of chloral once in May, 1894, and that he had seen him take chloral once in July, 1894; that the deceased had in May, 1894, stated to the witness that he, the deceased, was addicted to the use of hydrate of chloral, and had fainting spells; and that he made substantially the same statement to the witness in July, 1894. Appellant also stated that he would prove by other witnesses that hydrate of chloral, when taken by a person, is not cast out of the system, but is retained and accumulates in the system. The foregoing evidence which was offered, would have been responsive to said questions.

James Young had been seriously ill with quinsy for several weeks, and his throat had suppurated, was very sore and very much inflamed, almost stopping up his throat, and he had, among other medicines, been taking hydrate of chloral.  While in this condition, on the night of October 23, 1894, he and appellant had a difficulty; and it is the theory of the State that appellant seized the deceased by the throat with his right hand, the thumb on one side of the throat, and the fingers on the other, pressing them toward each other and back, while he placed his left hand on the back of the neck of the deceased and pressed forward, and that by reason of this pressure death resulted.  On the other hand, two of the contentions of appellant were that the death of Young was caused by the use of hydrate of chloral, and not by anything that he did, and that what he did was done in exercise of his right of self-defense.

It was shown by the evidence that the deceased had been taking chloral for several weeks before his death, and there was evidence tending to prove that he had taken much more than had been prescribed by his physician; but there was no evidence given or offered that showed or tended to show that hydrate of chloral taken by Young in May and July, 1894, had or could have had anything to do with his death, on October 23, 1894.    Moreover, said statements of the deceased made in May and July, 1894, were merely hearsay, and incompetent for that reason.  It is well settled that the person injured, whether living or dead, is not a party to the prosecution, and his admissions and statements are not evidence either for or against the accused, unless of the *res gestae,* dying declarations, or threats, but are hearsay, the same as those of any other third person.  *Williams* v. *State,* 52 Ala. 411; *Moses* v. *State,* 88 Ala. 78, 7 South. 101, 16 Am. St. 21,

and note; *Commonwealth* v. *Densmore,* 94 Mass. 535; *Commonwealth* v. *Sanders* (Mass.), 14 Gray 394, 77 Am. Dec. 335; *People* v. *McLaughlin,* 44 Cal. 435; *People* v. *McCrea,* 32 Cal. 98, 100; *People* v. *Hall,* 94 Cal. 595, 30 Pac. 7; *State* v. *Maitremme,* 14 La. Ann. 830; *Hauk* v. *State,* 148 Ind. 238, and cases cited; 2 Bishop's Crim. Proc., section 632; 1 Bishop's Crim. Proc., section 1248; Wharton's Crim. Ev., section 225; Gillett's Indirect and Collateral Ev., sections 229, 230.

Appellant claims that said admissions were admissible under the doctrine concerning uncommunicated threats, declared in *Holler* v. *State,* 37 Ind. 57; *Wood* v. *State,* 92 Ind. 269; *Boyle* v. *State,* 97 Ind. 322; *Leverich* v. *State,* 105 Ind. 277. All that is decided in the cases cited upon the point mentioned is, as said in *Leverich* v. *State, supra,* that "Evidence that the deceased, or prosecuting witness, attacked the defendant being first introduced, proof of previous threats by him is admissible upon the ground that such threats may tend to illustrate the character of the attack thus made, although never communicated to the defendant." This doctrine has no application to the evidence offered in this case.

The court did not err, therefore, in sustaining the objections of the State to the introduction of said evidence.

It is next insisted that the court erred in giving certain instructions of its own motion, and in refusing to give certain instructions requested by appellant. A number of the instructions given, and a number of those refused were concerning the offense of murder in the first and second degrees; but errors, if any were committed, in giving or refusing such instructions, were harmless, for the reason that appellant was found not guilty of murder in the first or second degree.

The court instructed the jury that if they found from the evidence beyond a reasonable doubt that appellant, in the county of Blackford and State of Indiana, without malice express or implied, and without premeditation, but voluntarily, upon a sudden heat, took the life of James Young, in manner and form as charged in the indictment, they should find him guilty of voluntary manslaughter. The objection urged to this instruction is that the word "unlawfully" was not used before the word "took" in the instruction. It was charged in the indictment, among other things, that appellant unlawfully, feloniously, and purposely killed and murdered James Young, setting out the means used. Under such instruction it is evident that the jury could not find appellant guilty of voluntary manslaughter, without finding that he unlawfully, feloniously, and purposely took the life of said Young. The instruction was not open, therefore, to the objection urged.

In two of the instructions the court, in speaking of the offense of involuntary manslaughter, and what acts, if perpetrated by appellant, and the death of the deceased was caused thereby, would constitute that offense, did not use the word "unlawful" in connection with the words "touch" and "touching." It is insisted by appellant that this was error, for the reason that, unless an indictment for assault and battery alleges that the touching was unlawful, it is not sufficient. It is true, as urged by appellant, that, to constitute the offense of assault and battery, the touching must be unlawful, and the indictment therefore to be sufficient, must allege that fact. It is not required, however, that an offense be charged in the language of the statute. It is sufficient if the same is charged in words importing the same meaning. *Chandler* v. *State*, 141 Ind. 106, 113-116, and cases

cited. It was not necessary for the court to use the word "unlawful" in said instructions if the elements stated were such that, when applied to the evidence and construed with the other instructions as a whole, the jury were not misled as to the essential elements of the offense of assault and battery.

It is settled law in this State that instructions are considered with reference to each other, and as an entirety, and not separately or in dissected parts; and if the instructions as a whole correctly and fairly present the law to the jury, even if some particular instruction, or some portion of an instruction, standing alone or taken abstractly, and not explained or qualified by others, may be erroneous, it will afford no grounds for reversal. *Cooper* v. *State*, 120 Ind. 377, 380, 381; *Boyle* v. *State*, 105 Ind. 469, 476; *Deilks* v. *State*, 141 Ind. 23; *Brown* v. *State*, 105 Ind. 385, 391; *Colee* v. *State*, 75 Ind. 511, 515; *Rauck* v. *State*, 110 Ind. 384, 390; *Kennedy* v. *State*, 107 Ind. 144, 149; *Epps* v. *State*, 102 Ind. 539, 553; *Gallaher* v. *State*, 101 Ind. 411, 412; *Story* v. *State*, 99 Ind. 413, 414; *Barnett* v. *State*, 100 Ind. 171, 176; *McDermott* v. *State*, 89 Ind. 187, 193; *Goodwin* v. *State*, 96 Ind. 550, 559; *Garber* v. *State*, 94 Ind. 219; *Hall* v. *State*, 8 Ind. 439, 450; *Craig* v. *Frazier*, 127 Ind. 286, 287; *Staser* v. *Hogan*, 120 Ind. 207, 225, 226; *Union Life Ins. Co.* v. *Buchanan*, 100 Ind. 63, 74; *Atkinson* v. *Dailey*, 107 Ind. 117; *Lytton* v. *Baird*, 95 Ind. 349, 351, 353; *Western Union Tel. Co.* v. *Young*, 93 Ind. 118; *Eggleston* v. *Castle*, 42 Ind. 531; *Mitchell* v. *Allison*, 29 Ind. 43; *Shaw* v. *Saum*, 9 Ind. 517; *Newport* v. *State*, 140 Ind. 299.

Mere verbal inaccuracies in instructions, or technical errors in the statement of abstract propositions of law, furnish no grounds for reversal, when they re-

result in no substantial harm to the defendant, if the instructions, taken together, correctly state the law applicable to the facts of the case. *Stout* v. *State,* 90 Ind. 1, 14; *Brown* v. *State, supra.* Nor is the giving of an erroneous instruction reversible error when it appears that the substantial rights of the defendant were not prejudiced thereby. *Stewart* v. *State,* 111 Ind. 554, 560; *Hall* v. *State, supra.* The foregoing rules apply to criminal as well as civil cases. *Story* v. *State, supra.*

In *Cooper* v. *State, supra,* the trial court in defining the offense of voluntary manslaughter had omitted the word "voluntary," but in other respects the definition followed the statute literally. This court said in that case: "It is not perceived how the defendant could have been prejudiced by the omission of this word. Besides, the omitted word was in effect supplied in an instruction subsequently given.

"The rule is firmly established that if, upon considering all the instructions together, it fairly appears that the law was stated with substantial accuracy, so that the jury could not have been misled, no ground for reversal is presented, even though a particular instruction, or some detached portion thereof, may not be precisely accurate."

In *Boyle* v. *State, supra,* this court said: "We have again and again decided that instructions are not to be disposed of by a process of dissection, but are to be taken as a whole. It would be unreasonable to expect that one instruction should cover an entire case, or that the jury should take the law from one of a series of instructions. Where an instruction stands alone upon a material point, neither explained nor qualified by any others, then it might with reason be affirmed that if it erroneously expressed the law there should be a reversal, but where it forms one of a series bearing on a given question, and, taking the entire series

together, the law is correctly stated to the jury, it is otherwise."

In *Atkinson* v. *Dailey, supra,* the court gave an instruction that the plaintiff was entitled to recover on making certain proof, ignoring the defense set up by the defendant. In a subsequent instruction, the court presented the law of the case as applicable to the defense set up; and this court said that, construing both instructions together, the jury were not misled, but must have understood the rights of plaintiff and defendant under the pleading.

Under the facts of this case, if appellant choked the deceased, such act was unlawful, unless done in self defense. If the act of choking was not done in self defense, and the same caused the death of Young, then appellant was guilty at least of involuntary manslaughter. The jury were fully instructed as to the law of self defense, and fully understood therefrom that if appellant choked the deceased in the exercise of his right of self defense, and thereby caused the death of deceased, he was justified in so doing, and was not guilty of any offense. Said instructions, when considered together, correctly stated the law applicable to the facts of this case; and the cases of *Hunter* v. *State,* 101 Ind. 241; *Bird* v. *State,* 107 Ind. 154, and *Snyder* v. *State,* 59 Ind. 105, cited by appellant, are not in point here.

The jury were instructed that "involuntary manslaughter is committed when a person unlawfully kills another human being involuntarily, without malice, expressed or implied, but in the commission of some unlawful act," and that if they "believed from the evidence, beyond a reasonable doubt, that the defendant unlawfully committed an assault and battery upon James Young, without any intention or purpose to kill him, and that the death of said Young resulted

from said assault and battery, you should find the defendant guilty of involuntary manslaughter." The statute defining the offense, and stating its constituent elements, was also given to the jury. They were fully informed as to the essential elements constituting the offense of voluntary manslaughter, and were informed as to the difference between voluntary and involuntary manslaughter. They were also informed that any unlawful touching of another in a rude, insolent, or angry manner was an assault and battery. · It is clear, therefore, that the jury could not have been misled by the failure to use the word "unlawful" in said instructions in connection with the words "touched" and "touching."

In one instruction the court informed the jury, among other things, that under the indictment, they might find the appellant guilty of manslaughter. Appellant complains of this instruction, because the court did not say that the jury might find the appellant guilty of manslaughter "if the evidence warrants it." In another instruction the jury were informed that, under the indictment, they might find the appellant guilty of murder in the first degree, murder in the second degree, or manslaughter, "if the evidence warrants it." The jury were also instructed that, before the appellant could be convicted of any offense charged in the indictment, his guilt of such offense must be established by the evidence beyond a reasonable doubt, and, if the jury had a reasonable doubt of his guilt, they should acquit him.

In *Deilks* v. *State, supra,* it was held by this court that it was no objection to an instruction defining what must be proved in order to find the accused guilty of the offense charged, that it used the phrase, "if you believe" instead of "if you believe beyond a reasonable doubt," if the court has in other instructions

fully informed the jury that the defendant can only be found guilty when his guilt is established beyond a reasonable doubt. It follows, therefore, under the established rule that the instructions are to be considered as a whole, that said instruction, when so considered, was not erroneous.

The court gave an instruction in regard to the proof of facts by inference from other facts and circumstances in evidence, and the objection urged thereto by appellant is, that "it told the jury to convict if the State had proved its case by a preponderance of the evidence." The instruction upon the subject of reasonable doubt was in the language used in *Stout* v. *State, supra,* on p. 12.

The court also gave the following instruction: "The defendant is presumed to be innocent until proven guilty beyond a reasonable doubt; and this presumption prevails until the close of the trial, and you should weigh the evidence in the light of this presumption, and it should be your duty to reconcile all the evidence in the light of this presumption if you can."

It is evident that the jury could not have understood from the instruction objected to, considered in connection with the other instructions that they could find appellant guilty upon a mere preponderance of the evidence.

While the instruction complained of is not to be commended as a model, and should not have been given on account of its ambiguity, yet when considered in connection with the other instructions, as is required under the well settled rule, it is clear that the law was correctly stated upon the subject of reasonable doubt, and the jury could not have been misled by said instruction.

The court gave an instruction in regard to the rights and duties of the jury in weighing the evidence of any

Shields *v.* The State.

witness whom the jury may find to have been impeached, or who has willfully and falsely testified concerning any matter or thing material to the issues in the cause. Appellant objects to this instruction, not because it contains an erroneous statement of the law, but because there was no evidence to which the same was applicable. It is not necessary for us to determine whether it was applicable to the evidence or not, for the reason that, if it was not, no inference injurious to appellant could be drawn therefrom, and therefore it could not have prejudiced the substantial right of the appellant, and was therefore harmless. *Stockton* v. *Stockton*, 73 Ind. 510, 513, 514; *Mode* v. *Beasley*, 143 Ind. 306, 331, 332, 335.

It is next urged that the court erred in refusing to give instruction eighteen, requested by appellant. This instruction informs the jury that in doubtful cases evidence of good character is conclusive in favor of the party accused of crime. Under our law the jury are the exclusive judges of the facts and of the credibility of the witnesses, and if they have a reasonable doubt of the guilt of the accused he must be acquitted, whether there is any evidence of his good character or not. The instruction refused was not a correct statement of the law, and was properly refused.

The substance of instructions twenty-three, twenty-four, and twenty-five, requested by appellant, was embraced in the instructions given by the court, and for that reason there was no error in the refusal to give them.

The instructions given by the court of its own motion were not numbered and signed, as required by the fifth clause of section 1892, Burns' R. S. 1894 (1823, Horner's R. S. 1897), and this is assigned as a cause for a new trial. Under the statute, it was the duty of the trial judge to number and sign the instructions given

by him. His failure to comply with the statute has imposed much extra labor upon counsel and this court. While trial judges should be careful to comply with the statute, and number and sign instructions given, as required, and thus materially lessen the labor of counsel and this court on appeal, yet the failure to do so does not authorize the reversal of a cause. Section 1964, Burns' R. S. 1894 (1891, Horner's R. S. 1897), provides that, in the consideration of questions on appeal, the Supreme Court shall not regard technical errors or defects or exceptions to any decision or action in the court below, which did not, in the opinion of the Supreme Court, prejudice the substantial rights of the defendant. The failure of the trial court to number and sign the instructions given, as required by the statute, did not prejudice appellant in his substantial rights, and therefore furnishes no ground for reversal.

It is urged that the verdict is contrary to law and the evidence. There was evidence given at the trial sustaining every material allegation in the indictment, and, although there was conflict upon some points, we are not authorized to reverse the cause for that reason. *Deilks* v. *State, supra; Livingston* v. *State,* 141 Ind. 131, 132, 133; *Deal* v. *State,* 140 Ind. 354; *Hire* v. *State,* 144 Ind. 359; *Lankford* v. *State,* 144 Ind. 428, 434; *Robb* v. *State,* 144 Ind. 569, 570; *Lake Erie, etc., R. R. Co.* v. *Stick,* 143 Ind. 449, 456.

It is also urged as a reason for reversal that the punishment is excessive. The only limitations to the power of the legislature to fix the punishment for crimes are those imposed by the constitution of this State and the United States. Section sixteen of article one of the constitution of this State, which provides that cruel and unusual punishments shall not be inflicted, has reference to the statute fixing the punishment, and not to the punishment assessed by the jury

within the limits fixed by the statute. If the statute fixing the punishment is not in violation of said section of the constitution, then any punishment assessed by a court or jury within the limits fixed by the statute cannot be adjudged excessive by this court, for the reason that the power to declare what punishment may be assessed against those convicted of crime is not a judicial power, but is a legislative power, controlled only by the provisions of the constitution. *Ledgerwood* v. *State*, 134 Ind. 81, 91; *Murphy* v. *State*, 87 Ind. 579, 580, 581; *McCulley* v. *State*, 62 Ind. 428, 436; Gillett's Crim. Law, section 35.

Finding no available error in the record the judgment is affirmed.